**Electronically Filed
Intermediate Court of Appeals
30703
04-APR-2012
08:26 AM**

NO. 30703

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DANYELA CASTRO, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO. 1DTA-10-01758)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley and Ginoza, JJ.)

Defendant-Appellant Danyela Castro (Castro) appeals from the "Notice of Entry of Judgment and/or Order and Plea/Judgment" entered July 20, 2010 in the District Court of the First Circuit, Wahiawa Division[1] (district court).  The district court entered a judgment of conviction against Castro for operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) (Supp. 2011).[2]

---

[1]  The Honorable Lono J. Lee presided.

[2]  HRS § 291E-61 provides in relevant part:

    **§291E-61  Operating a vehicle under the influence of an intoxicant.**  (a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

    (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

On appeal, Castro contends:

(1) The Motion to Suppress should have been promptly disposed of and evidence adduced at the suppression hearing should not have been admitted at the bench trial.

(2) Evidence obtained as a result of the traffic stop should have been suppressed because there was no reasonable suspicion to justify a traffic stop.

(3) The Complaint and oral arraignment failed to allege essential facts.

(4) Horizontal Gaze Nystagmus test (HGN test) should not have been admitted into evidence or relied on by the district court.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Castro's appeal is without merit.

1.  The district court did not err when it held the suppression hearing and the bench trial on the same day and incorporated the testimony admitted at the suppression hearing into the bench trial.

Castro contends that holding the suppression hearing immediately before the bench trial and incorporating the evidence adduced at the suppression hearing into the bench trial violated "fundamental constitutional protections" and deprived her of a fair trial.

Hawaiʻi Rules of Penal Procedure (HRPP) Rule 12(e) states as follows:

> **Ruling on motion.** A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that <u>a motion to suppress made before trial shall be determined before trial</u>. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

(Emphasis added.)

"[C]ourts have . . . inherent power to control the litigation process before them." Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994). The district court balances "the interest of the state against fundamental fairness to the defendant with the added ingredient of the orderly functioning of the court system." State v. Moriwake, 65 Haw. 47, 56, 647 P.2d 705, 712 (1982) (internal quotation marks and citation omitted).

Castro argues that the district court should have "promptly disposed of" her Motion to Suppress at the May 20, 2010 hearing. However, Castro failed to appear at the hearing even though HRPP Rule 43 mandated her presence. HRPP Rule 43(a) ("The defendant shall be present at the arraignment, at the time of the plea, [and] at evidentiary pretrial hearings[.]"). Castro's counsel orally moved to waive Castro's presence. The district court denied Castro's motion and continued the Motion to Suppress to the same date already set for trial.

Because the district court has inherent power to control the litigation process, it did not abuse its discretion when it continued the May 20, 2010 hearing after Castro failed to appear. Richardson, 76 Hawai'i at 507, 880 P.2d at 182.

At the next hearing, on June 24, 2010, Castro presented her motion to hold the suppression hearing far enough ahead of trial to prepare a transcript to use at trial. The State argued that "out of judicial economy, it doesn't make sense to have two trials." The State noted in its memorandum in opposition to Castro's motion that the normal practice of the district court was to strive to hold the suppression hearing on the same day as the trial, "for purposes of judicial economy." The district court agreed with the State and denied Castro's motion.

The suppression hearing and bench trial were held on July 20, 2010. The only witness was Officer Susan Klimek (Officer Klimek), the arresting officer. Castro and the State stipulated that Officer Klimek's suppression hearing testimony

could be used at the bench trial held immediately afterwards so the same testimony did not have to be repeated. The district court acknowledged that Castro's stipulation was made "with the understanding . . . that such an agreement will not be considered a waiver of any issues you have raised in your writ of mandamus[3] or your appeal to the -- the Intermediate Court of Appeals or supreme court." Castro specifically stated she was not waiving her right to appeal "the need for a transcript to assist us in making essential trial decisions and to use to impeach this officer."

After the State examined Officer Klimek during the suppression hearing, Castro conducted the cross-examination. Castro had full opportunity to cross-examine and impeach Officer Klimek. Castro questioned discrepancies such as Officer Klimek's testimony that she heard screeching tires even though she had not mentioned screeching tires in her report. Castro inquired about Officer Klimek's procedures for conducting the field sobriety tests (FSTs) and challenged her belief that Castro had nearly run into the back of her car. The district court found sufficient evidence to support reasonable suspicion for the traffic stop and denied Castro's Motion to Suppress. The court then proceeded to the bench trial.

Castro cites to State v. Mundon, 121 Hawai'i 339, 219 P.3d 1126 (2009) for the proposition that it is "reversible error to fail to provide a defendant a written transcript before trial[.]" In Mundon, the pro se defendant was denied written transcripts of a preliminary hearing and the grand jury proceeding. Id. at 355, 219 P.3d at 1142. The Hawai'i Supreme Court determined that the defendant was prejudiced when he was denied the written transcripts because the transcripts "had

---

[3] The issues raised in Castro's petition for a writ of mandamus, which the Hawai'i Supreme Court denied, included Castro's contention that (1) the suppression hearing should be held far enough in advance of trial to allow for a transcript to be made and (2) the district court should not incorporate wholesale the suppression hearing testimony into evidence at trial.

significant value to [the defendant] in preparing for trial." Id. at 357, 219 P.3d at 1144.

In the instant case, Castro's claim that she needed the written transcript of the suppression hearing to "use to impeach this officer" makes no sense, given that Officer Klimek's testimony was incorporated into the bench trial and, although Castro was not precluded from further cross-examining Officer Klimek during the trial proceedings, Castro made no attempt to do so. Rather, Castro simply chose to rely on the testimony that Officer Klimek had already given during the suppression hearing. Mundon is clearly distinguishable and does not support Castro's claim.

Castro cites to no Hawai'i case law supporting the proposition that it is a violation of a defendant's due process rights to hold the bench trial immediately after the suppression hearing, to incorporate the witness's testimony, or to proceed without waiting for a written transcript of a pretrial hearing. The district court did not abuse its discretion when it held the suppression hearing and bench trial consecutively on the same day and incorporated Officer Klimek's suppression hearing testimony into the bench trial.

> 2. The district court did not err in determining reasonable suspicion existed to justify a traffic stop.

Castro contends "the traffic stop was not supported by reasonable suspicion," and thus was a warrantless search and seizure, in violation of her rights under the United States and Hawai'i constitutions. "A stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures, as guaranteed by the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution." State v. Bohannon, 102 Hawai'i 228, 237, 74 P.3d

980, 989 (2003) (internal quotation marks, citation, and brackets omitted).

Hawai'i courts apply the following standard to determine the reasonableness of an investigative vehicle stop:

> To justify an investigative stop, short of an arrest based on probable cause, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The ultimate test in these situations must be whether from these facts, measured by an objective standard, a man of reasonable caution would be warranted in believing that criminal activity was afoot and that the action taken was appropriate.

State v. Barnes, 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977) (internal quotation marks and citations omitted). Our courts consider the totality of the circumstances to determine whether a stop is supported by reasonable suspicion. State v. Spillner, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

The instant case is similar to Bohannon, which Castro unsuccessfully attempts to distinguish. In Bohannon, the Hawai'i Supreme Court vacated the lower court's suppression of evidence, determining there was reasonable suspicion to stop the defendant based on the totality of the circumstances. Bohannon, 102 Hawai'i at 237-38, 74 P.3d at 989-90. The defendant, Bohannon, had screeched to a stop within two feet of Officer Kashimoto's car waiting at a stop light. Id. at 230, 74 P.3d at 982. Officer Kashimoto pulled Bohannon over "to investigate whether [Bohannon] was operating her vehicle 'in a safe and prudent manner.'" Id. at 231, 74 P.3d at 983. Among the facts supporting the reasonableness of the traffic stop were that Bohannon had come to a "screeching halt" to avoid hitting Officer Kashimoto, her car had come within less than two feet of the officer's car before it stop, Officer Kashimoto had taken evasive action in the belief he was about to be hit, and Bohannon failed to respond immediately to the officer's directions to pull over. Id. at 237, 74 P.3d at 989. The supreme court concluded that in light of "the totality of the circumstances known to Officer

Kashimoto at the time of the incident . . . his investigative stop of Bohannon was 'within the parameters of permissible police conduct,'" and the motion to suppress should have been denied. Id. at 238, 74 P.3d at 990 (quoting Barnes, 58 Haw. at 337, 568 P.2d at 1211).

In the instant case, Castro's car was traveling "real fast." Officer Klimek took evasive action in anticipation of being struck by Castro's car, which came to a screeching stop only inches from Officer Klimek's car. These "specific and articulable facts . . . taken together with rational inferences from those facts" were enough to create an objective reasonable suspicion that "criminal activity was afoot" and the district court did not err when it did not suppress the evidence obtained during the traffic stop. Bohannon, 102 Hawai'i at 237-38, 74 P.3d at 989-90.

3. The Complaint and oral arraignment did not fail to allege essential facts.

Castro argued at trial that the State failed to include the essential elements in its Complaint, making the Complaint invalid and depriving the district court of jurisdiction. Specifically, Castro argued that the Complaint did not include a mens rea, or state of mind, element.

"It is well settled that an accusation must sufficiently allege all of the essential elements of the offense charged, a requirement that obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint." State v. Wheeler, 121 Hawai'i 383, 391, 219 P.3d 1170, 1178 (internal quotation marks, brackets, and citation omitted). The sufficiency of the complaint is evaluated by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet." Id. (internal quotation marks, citation, and brackets omitted).

HRPP Rule 7(d) requires that "[t]he charge shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."  Castro was charged as follows:

> On or about the 7th day of March, 2010, in the City and County of Honolulu, State of Hawaii, DANYELA S.R. CASTRO did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty; and/or did operate or assume actual physical control of a vehicle upon a public way, street, road, or highway with .08 or more grams of alcohol per two hundred ten liters of breath, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E-61(a)(1) and/or (a)(3) of the Hawaii Revised Statutes.

Castro was convicted of violating HRS § 291E-61(a)(1), which does not specify a mens rea.  Because mens rea is not an essential element of HRS § 291E-61(a)(1), a charge under this statute is sufficient without alleging mens rea.  Wheeler, 121 Hawaiʻi at 391-93, 219 P.3d at 1178-1180.

> 4.    Even if the district court erred when it admitted the HGN test into evidence and relied, in part, on it to reach a verdict, the error was harmless.

Castro alleges that no foundation was established to show that Officer Klimek properly performed the HGN test and, in fact, Officer Klimek's procedures for administering the test "grossly deviated from the actual HGN Test approved by the NHTSA [National Highway and Transportation Safety Administration]."  Castro alleges, and the State concedes, that Officer Klimek's testimony suggests she may have consolidated test procedures that should have been administered separately, thus deviating from the approved test procedures.  On that basis, Castro argues, the HGN test should not have been admitted.

"Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are

deemed harmless." State v. Toyomura, 80 Hawai'i 8, 27, 904 P.2d 893, 912 (1995) (internal quotation marks and citation omitted).

The State contends, and we agree, that even if there was a lack of foundation to admit the HGN test, there was overwhelming evidence presented to support a conviction and the exclusion of the HGN test would not have changed the outcome. Officer Klimek first noticed Castro while Officer Klimek was stopped in her car at a traffic light. Officer Klimek could see Castro's car in her rear view mirror traveling so fast that Officer Klimek braced herself for a collision from behind. Castro did not hit her but the tires squealed and the car stopped so close to Officer Klimek's car that she could not step between the cars. When Officer Klimek asked Castro for her driver's license, registration, and insurance, Castro fumbled about in her purse and eventually gave her purse to her passenger to look for the requested paperwork.

Officer Klimek could smell alcohol on Castro's breath and noticed Castro's eyes were red, watery, and bloodshot. When Castro got out and walked toward the back of the car, she kept one hand on the car, as if to steady herself. In addition to the HGN test, Officer Klimek administered the Walk-and-Turn and One-Leg-Stand FSTs. In those two FSTS, Castro exhibited all the clues of alcohol impairment.

Even without the HGN test, there was overwhelming and compelling evidence to show beyond a reasonable doubt that Castro was guilty of being under the influence of alcohol in an amount sufficient to impair her normal mental faculties or ability to care for herself and guard against casualty. HRS § 291E-61(a)(1). Thus, even if the district court erred in admitting the HGN test into evidence, the error was harmless. HRPP Rule 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

Therefore,

IT IS HEREBY ORDERED that the "Notice of Entry of Judgment and/or Order and Plea/Judgment" entered July 20, 2010 in the District Court of the First Circuit, Wahiawa Division is affirmed.

DATED:   Honolulu, Hawaiʻi, April 4, 2012.

On the briefs:

Richard L. Holcomb
(Holcomb Law, LLLC)
for Defendant-Appellant.

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

10